## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| HOPE LINDSTROM, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:26-cv-3024 |
| v. | ) | |
| | ) | |
| MICHAEL HILGERS, in his official | ) | **COMPLAINT FOR** |
| capacity as the Attorney General of the | ) | **DECLARATORY AND** |
| State of Nebraska; and | ) | **INJUNCTIVE RELIEF** |
| | ) | |
| ASHLEY NEWMYER, in her official | ) | **EXPEDITED REVIEW** |
| capacity as the Director of the Division | ) | **REQUESTED** |
| of Public Health for the Nebraska | ) | |
| Department of Health and Human | ) | |
| Services, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## INTRODUCTION

1.      Few decisions are more personal or consequential than how a woman gives birth. Nebraska intrudes on that decision by prohibiting expecting mothers from hiring a certified nurse-midwife to attend a home birth, even though home birth itself remains entirely legal.

2.      Plaintiff Hope Lindstrom is an expecting mother and she wishes to give birth at home with the assistance of a certified nurse midwife. She seeks that care for personal, medical, and religious reasons, and has had a positive experience with midwife-assisted childbirth in the past. But Nebraska law makes that choice unavailable to her.

1

3. Under Nebraska's Certified Nurse Midwifery Practice Act, a woman may legally give birth at home, but she may not receive assistance from a certified nurse midwife. Instead, to have a home birth, she must either give birth entirely unassisted or seek out an attendant willing to risk felony conviction and jail time.

4. Nebraska's restrictions arbitrarily and unnecessarily burden the right to choose the manner and circumstances of childbirth. They interfere with deeply personal family and religious decisions, deny access to safe and lawful medical care, and expose expecting mothers to greater risk.

5. Lindstrom brings this action to vindicate her rights under the Due Process Clause of the Fourteenth Amendment, the Free Exercise Clause of the First Amendment, and the Nebraska First Freedom Act. She seeks declaratory and injunctive relief to prevent enforcement of Nebraska's ban on certified nurse midwives attending home births.

## JURISDICTION AND VENUE

6. This action arises under the First and Fourteenth Amendments to the United States Constitution; 42 U.S.C. § 1983; and the Nebraska First Freedom Act, Neb. Rev. Stat. §§ 20-701 to -705. This Court has jurisdiction over the federal claims under 28 U.S.C. § 1331 (federal question) and § 1343(a)(3) (redress for deprivation of civil rights), and over the state claim under 28 U.S.C. § 1367 (supplemental jurisdiction). Declaratory relief is

authorized by the Declaratory Judgment Act, 28 U.S.C. § 2201, and by the Nebraska First Freedom Act, Neb. Rev. Stat. § 20-704(3)(b).

7.     Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(1), because the Defendant resides in this District, and 28 U.S.C. § 1391(b)(2), because a substantial part of the acts giving rise to Lindstrom's claims occurred and continues to occur in this District.

## PARTIES

### Plaintiff

8.     Plaintiff Hope Lindstrom is an expecting mother and licensed pastor. She is a citizen of the United States and a resident of Hastings, Nebraska.

### Defendants

9.     Defendant Michael Hilgers is the Attorney General of Nebraska. His official duties include upholding and defending the laws of Nebraska and enforcing health regulations. He is responsible for enforcing Nebraska's Certified Nurse Midwifery Practice Act. He is sued in his official capacity only.

10.    Defendant Ashley Newmeyer is the Director of the Division of Public Health for the Nebraska Department of Health and Human Services (DHHS). Ms. Newmeyer has the ultimate responsibility for regulating health-related professions and facilities in the state of Nebraska. She is responsible

for adopting rules and regulations to carry out the Certified Nurse Midwifery Practice Act. She is sued in her official capacity only.

## FACTUAL ALLEGATIONS

### Home Birth

11.   During the colonial period, and at the time of the enactment of the Bill of Rights in 1791, the vast majority of American births occurred outside of a hospital with the assistance of midwives.

12.   When the Fourteenth Amendment was enacted in 1868, midwifery was universally legal, and women maintained extensive choices among a variety of birth assistants.

13.   From the founding through the early twentieth century, choices regarding the person assisting childbirth and the place and manner of childbirth were, by practice, law, and custom, a matter of individual and family choice.

14.   Home birth can be a safe option for mother and child, and it is legal in all 50 states.

15.   Home births alleviate the financial burden of childbirth on the overall healthcare system. Service charges for home births are generally lower than charges for hospital births in the same service area. Further, the lower number of unnecessary medical interventions results in a significant reduction in childbirth costs.

4

16.    Home births also offer mothers an important alternative to hospitals. They provide a comfortable environment, affordable and accessible services, avoidance of unwanted contact with sick people, and compatibility with personal and religious values.

17.    In addition to conferring the benefits enjoyed by expecting mothers and their infants, safe home births alleviate the pressure on overwhelmed or understaffed hospital maternity wards.

18.    Home birth is rising in popularity again nationwide and is at its highest level in decades. Many of those who choose home birth for religious reasons or based on personal values, like the Amish, will proceed with a home birth even if they are unable to secure the services of a qualified certified nurse midwife (CNM), leading to a significantly riskier childbirth experience.

19.    The dearth of physicians willing and able to attend home births, combined with the state's restrictions on CNMs, has pushed Nebraska women to less safe alternatives, including unassisted home birth and home birth assisted by lay midwives or others who operate without regulation in Nebraska.

20.    30% of childbirths in Nebraska occur in underserved areas with few medical services.

21.    Unassisted labor or labor with the assistance of a provider with no formal training can be dangerous. Untrained mothers or birth attendants may not know if or when a hospital transfer becomes necessary.

22.     There is a demand for CNMs among pregnant Nebraska women, but their options are limited due to the restriction challenged here.

23.     There is a physician shortage in Nebraska, with many rural women not having ready access to a doctor. Prenatal care is especially scarce—some women must drive over an hour to reach their OB-GYN. This has resulted in some women giving birth on the road on the way to the closest hospital with childbirth services.

## Challenged Law

24.     To become a CNM in Nebraska, a person must be a licensed registered nurse and must hold a degree from a graduate-level program—most often a Master of Science in Nursing with specialization in midwifery—accredited by Accreditation Commission for Midwifery Education (ACME). Further, CNMs must pass a rigorous certification examination administered by ACME.

25.     Despite these qualifications, Nebraska law prohibits CNMs from attending home births even if under the direct supervision of a collaborating physician. Neb. Rev. Stat. § 38-613(3)(b) ("a certified nurse midwife shall not attend a home delivery").

26.     This law, unique to Nebraska, excludes the providers with some of the most specialized childbirth training from home births.

27.    Failure to adhere to the challenged provision is a felony and can lead to fines and criminal prosecution for CNMs.

28.    The challenged restrictions thereby leave expecting mothers with only two options for home births: to labor unassisted or to be attended by a physician. Because physicians are typically unavailable for home births, particularly in rural areas, the most common path for a woman wishing to experience a home birth is to proceed unassisted, even if she would rather have help from a trained professional.

### Plaintiff

29.    Plaintiff Hope Lindstrom is a resident of Hastings, Nebraska, a rural town nearly two hours west of Lincoln. She is originally from Colorado and later lived in Oregon, where she attended ministry school, met her husband, and started her family. She is a licensed pastor through Christian and Missionary Alliance, an evangelical Christian denomination.

30.    Lindstrom and her husband relocated to Nebraska in 2024 to raise their children in a small community that reflects their own personal values.

31.    Lindstrom is currently pregnant with her second child, a daughter, with an expected due date on or around April 22, 2026. It is a low-risk pregnancy.

32.    Her first child, also a daughter, is two years old. Lindstrom expects to give birth multiple times in the future, and she and her husband intend to

have at least four children. She and her husband expect to reside in Nebraska throughout her childbearing years.

33. For both her current pregnancy and all future childbirths, Lindstrom wishes to give birth at home with the assistance of a CNM.

**Lindstrom's Prior Birth Experience with CNM Care**

34. In April 2023, Lindstrom gave birth to her first child at a licensed birth center in Oregon with CNM assistance. The birth center was located approximately ten minutes from her home and operated in a non-clinical setting resembling a private residence rather than a hospital.

35. For that first birth, Lindstrom received all prenatal, delivery, and postpartum care from CNMs. During pregnancy, she met with multiple CNMs who rotated through appointments, allowing her to build familiarity and trust with each provider. Lindstrom did not receive obstetric care during pregnancy or postpartum.

36. Lindstrom carried her first pregnancy to forty-two weeks and delivered via water birth two weeks after her due date. Although induction had been scheduled for the morning of delivery, Lindstrom went into labor naturally. CNMs monitored both maternal and fetal health and did not pressure Lindstrom into induction or other medical interventions.

37. Following delivery, CNMs provided postpartum care for Lindstrom and her newborn, including house calls during recovery. CNMs also provided

8

pediatric care for Lindstrom's child during the first six weeks postpartum, eliminating the need for immediate travel for newborn appointments.

38. Lindstrom's prior birth experience was positive and affirming. It emphasized continuity of care, individualized decision-making, and respect for the mother's experience throughout pregnancy, labor, and recovery.

### Lindstrom's Childbirth Preferences and Values

39. Based on her prior experience and her personal and religious beliefs, Lindstrom is confident that home birth with CNM assistance is the childbirth model best suited to her medical needs, personal values, and family plans.

40. Lindstrom seeks home birth for several reasons. She wishes to avoid unnecessary medical interventions commonly associated with hospital births, including interventions driven by scheduling, efficiency, or provider convenience.

41. Lindstrom has personally observed and otherwise learned of negative hospital birth experiences from family members, friends, and others, including experiences involving pressure to accept unwanted interventions and limited autonomy during labor.

42. Lindstrom values an approach to childbirth that recognizes pregnancy and labor as natural physiological processes rather than medical conditions requiring clinical management. She was raised with an emphasis

on holistic healthcare that respects the body's natural processes while remaining open to medical intervention when necessary.

43.    Lindstrom is not opposed to traditional medicine but seeks to avoid unnecessary medicalization.

44.    Lindstrom is a licensed pastor, and her religious beliefs inform and govern her approach to pregnancy and childbirth. She regards childbirth as a sacred event and desires a prayerful environment that allows worship, prayer, and spiritual participation by her husband during the birth.

45.    Lindstrom believes hospital settings do not meaningfully accommodate or respect her religious and personal values, instead treating childbirth as a clinical event.

46.    Lindstrom is also concerned that a hospital birth would require her to act as a constant advocate for herself while in a physically and emotionally vulnerable state, particularly if healthcare providers attempt to impose their views regarding pain relief, induction, or other medical interventions inconsistent with her wishes.

**Safety Concerns and the Need for Professional Assistance**

47.    Lindstrom does not believe unassisted home birth is reliably safe or responsible for her. She believes that labor without professional medical assistance can be dangerous and wishes to have a trained provider present to monitor labor and respond appropriately if complications arise. This view

10

arises in part from her strong religious belief in responsible stewardship of life and health.

48. Lindstrom understands that CNMs are specifically trained to manage low-risk pregnancies, identify complications, and coordinate timely hospital transfers when necessary.

49. Lindstrom is aware of established emergency transfer protocols used by CNMs under state law.

### Effect of Nebraska Law on Lindstrom

50. After relocating to Nebraska, Lindstrom researched childbirth options in the state. She discovered that Nebraska has no licensed birth centers and prohibits CNMs from attending home births.

51. Lindstrom learned that midwives in Nebraska have faced criminal law enforcement and professional discipline related to home birth attendance.

52. She contacted CNMs for assistance and learned that many CNMs would be willing to attend home births but for Nebraska's statutory restrictions.

53. Lindstrom was surprised and distressed to learn that Nebraska law leaves her without access to professionally supported home birth. She has experienced significant anxiety about being required to give birth in a hospital setting despite her preferences, values, and prior experience.

11

54.    If required to give birth in a hospital, Lindstrom plans to seek care at a hospital in Lincoln, Nebraska—the only facility within traveling distance that offers a water birth experience supported by CNMs. That hospital is approximately one hour and forty-five minutes away from Lindstrom's home by car.

55.    There is a local hospital near Lindstrom's residence, but it does not offer comparable CNM-supported childbirth options, although it would be available for emergency care were she to give birth at home.

56.    As a result of Nebraska's restrictions, Lindstrom must travel nearly two hours to receive care that departs in significant ways from her desired birth plan, despite the availability of nearby emergency medical facilities.

57.    If allowed to give birth at home with a CNM attendant, Lindstrom would insist that any birth attendant adhere to health and safety regulations including, but not limited to, CNM licensing and patient risk pre-qualification.

## Ongoing and Prospective Harm

58.    Lindstrom desires to give birth at home with CNM assistance for this and future pregnancies. Nebraska's prohibition on CNMs attending home births prevents Lindstrom from exercising that choice and will continue to burden her in future childbirths.

59.    Lindstrom recognizes that this is a matter of personal choice, does not seek to impose her preferences or religious values on others, and does not believe home birth is appropriate for all women or all pregnancies. She seeks only the ability as a woman who desires home birth for a low-risk pregnancy to make an informed, voluntary choice and to receive care from qualified medical professionals consistent with her values and circumstances.

60.    Lindstrom intends to give birth multiple times in the future and remains committed to home birth with CNM assistance. Nebraska's prohibition ensures that Lindstrom will face the same unlawful constraints in future pregnancies unless the law is enjoined.

61.    Lindstrom challenges Nebraska's prohibition as applied to her choice to give birth in the manner and setting she deems appropriate, with the assistance of a licensed medical professional. The choice of where and how to give birth implicates bodily integrity, family life, religious beliefs, and deeply personal decisions concerning pregnancy and childbirth.

## FIRST CLAIM FOR RELIEF

### The Certified Nurse Midwifery Practice Act,
### Neb. Rev. Stat. 613(3)(b), Violates the Due Process
### of Law Clause of the Fourteenth Amendment

62.    Lindstrom incorporates by reference each and every allegation set forth in this Complaint.

63.    Lindstrom is a person under 42 U.S.C. § 1983.

64.    The Due Process of Law Clause of the Fourteenth Amendment protects the liberty of individuals to be free from undue government interference.

65.    Under this Clause, a law cannot deprive any person of her fundamental right to choose the manner and circumstances of giving birth unless the law is narrowly tailored to achieve a compelling government interest. Even if the right to choose the manner and circumstances of giving birth is considered non-fundamental, the law should still be invalidated if there is no rational connection to a legitimate government interest.

66.    Decisions concerning childbirth directly affect a woman's body, medical autonomy, and physical integrity. They involve intimate, irreversible physical processes and carry profound consequences for both mother and child.

67.    The right of women to choose the manner and circumstances of giving birth is deeply rooted in this nation's history and tradition. Throughout American history, childbirth has occurred primarily outside of hospitals and has traditionally been attended by midwives rather than physicians. Government regulation of childbirth has historically focused on health and safety, not on prohibiting women from choosing the setting or attendants for childbirth.

68.    But by imposing the challenged provisions on CNMs and expecting mothers, Nebraska unnecessarily limits and burdens mothers' privacy in family-planning and their choices for childbirth services.

69.    These burdens imposed by Nebraska are not narrowly tailored to a compelling state interest. Indeed, they are not even rationally related to a legitimate government interest.

70.    Nebraska's prohibition applies categorically, without regard to an individual woman's health, pregnancy risk level, proximity to emergency care, the qualifications of the CNM, or whether the CNM has a collaborative or supervisory arrangement with a physician. Lindstrom's pregnancy is low-risk, yet the law makes no allowance for individualized assessment.

71.    Expecting mothers in many parts of Nebraska, especially rural areas, have no options for medically trained birth attendants at home births.

72.    Nebraska's prohibition on CNMs attending home births does not reflect a judgment about training, competence, or patient safety. CNMs are licensed medical professionals whom Nebraska permits to provide prenatal, delivery, and postpartum care in hospitals and other clinical settings.

73.    Instead, the prohibition functions to reserve childbirth services for hospital-based providers by excluding CNMs from the home birth setting altogether. The law does not prohibit unassisted home birth. It excludes only

CNMs—the providers most readily able to safely attend low-risk out-of-hospital births.

74. CNMs are highly trained and regulated by Nebraska law. Federal and state law ensure that home birth patients receive timely emergency services if necessary. There is no compelling or rational reason to impose the challenged restrictions, which effectively deny access to services in many parts of the state, including where Lindstrom lives.

75. The law increases risk by pushing women into unassisted births or births assisted by unregulated providers, particularly in rural areas such as Hastings.

76. The effect is to channel childbirth into institutional settings by eliminating professional alternatives, not to advance patient safety.

77. Given the time-sensitive nature of childbirth, Lindstrom is suffering substantial and irreparable harm and will continue to do so until this Court declares the challenged restrictions unlawful and enjoins their enforcement.

78. Because pregnancy and childbirth are inherently time-limited events, full judicial review will be impossible for Lindstrom's current pregnancy without temporary injunctive relief.

79.    However, even if Lindstrom is forced to give birth in a hospital setting for her current pregnancy, she seeks prospective relief from the challenged restrictions for all future childbirths.

## SECOND CLAIM FOR RELIEF

### The Certified Nurse Midwifery Practice
### Act Violates the Free Exercise Clause of
### the First Amendment

80.    Lindstrom incorporates by reference each and every allegation set forth in this Complaint.

81.    The Free Exercise Clause of the First Amendment prohibits the government from enacting or enforcing laws that burden sincere religious exercise unless the law is neutral and generally applicable or, if not, unless the government satisfies strict scrutiny.

82.    Lindstrom holds sincere religious beliefs concerning pregnancy and childbirth, including the belief that childbirth is a sacred and spiritual event; that it should occur in a prayerful, non-clinical environment; that her husband should be able to participate through prayer and religious ritual; and that it should proceed with respect for the natural processes of the body, while remaining open to medical assistance where necessary.

83.    Lindstrom's religious beliefs do not merely inform her childbirth preferences; they affirmatively constrain the range of childbirth options she may conscientiously accept.

17

84. Because of these beliefs, Lindstrom cannot conscientiously choose a hospital birth, which conflicts with her religious convictions concerning the sacred, prayerful, and non-clinical nature of childbirth. For the same reasons, Lindstrom also cannot conscientiously choose an unassisted home birth, which would conflict with her religious obligation to exercise stewardship over her health and the life and health of her child.

85. Lindstrom's desire to give birth at home with the assistance of a CNM is motivated, at least in part, by these sincerely held religious beliefs.

86. As applied to Lindstrom, enforcement of Nebraska's prohibition on CNM-assisted home births burdens her religious exercise by forcing her to choose between: (a) giving birth in a hospital setting that conflicts with her religious convictions; (b) giving birth at home without the assistance of a medically trained professional; or (c) attempting to obtain CNM assistance in violation of Nebraska law.

87. Nebraska's prohibition on CNMs attending home births eliminates the only childbirth option that would allow Lindstrom to fully comply with both aspects of her sincerely held religious beliefs. As applied to Lindstrom, Nebraska law therefore forces her to choose which of her religious obligations to violate in order to comply with state law.

88. A law is not generally applicable if it "treat[s] *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*,

18

141 S.Ct. 1294, 1296 (2021) (per curiam). "[W]hether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Id.* The comparability analysis "is concerned with *the risks* various activities pose." *Id.* (emphasis added).

89.    The challenged prohibition against CNM-assisted home births is not generally applicable because it permits unassisted home births chosen for secular reasons while categorically forbidding the religiously motivated decision to have a home birth attended by licensed medical professionals with specialized training in childbirth.

90.    Nebraska thus allows conduct that presents greater risks while prohibiting conduct that would mitigate those risks, undermining any claim that the prohibition is generally applicable and uniformly directed at protecting maternal or fetal health.

91.    By permitting unassisted home birth while forbidding licensed professional assistance in religiously motivated home births, Nebraska treats comparable secular conduct more favorably than religious exercise.

92.    Even if Nebraska's prohibition were deemed neutral and generally applicable, its application to Lindstrom violates the Free Exercise Clause.

93.    Laws that substantially burden religious exercise at moments of heightened personal vulnerability and bodily integrity—such as childbirth—

implicate core Free Exercise concerns and cannot be insulated from meaningful constitutional review merely because they are framed as neutral or generally applicable regulations.

94.    To the extent *Employment Division v. Smith*, 494 U.S. 872 (1990) is read to foreclose strict scrutiny in this context, Lindstrom preserves her claim that *Smith* should be reconsidered or limited where neutral laws impose severe and categorical burdens on religious exercise involving bodily autonomy, family life, and intimate personal decisions, specifically including a mother's right to select the place and manner of giving birth.

95.    Defendants cannot demonstrate that prohibiting CNMs from attending Lindstrom's home birth serves a compelling governmental interest as applied to her.

96.    Even assuming a governmental interest in maternal or fetal health, a categorical prohibition on CNM-attended home births is not narrowly tailored to serve that interest.

97.    Less restrictive alternatives are readily available, including individualized risk assessments, informed-consent requirements, emergency-transfer protocols, physician-collaboration requirements, and professional discipline for unsafe practices.

98.    Nebraska's prohibition is also underinclusive because Nebraska permits women to choose (whether motivated by religious belief or secular

20

considerations) to have CNMs provide prenatal, labor, delivery, and postpartum care in hospitals and other clinical settings—including care for low-risk pregnancies identical to Lindstrom's—while forbidding the same care for religiously motivated home births.

99. Lindstrom's religious beliefs do not reject medical care. To the contrary, they require her to remain open to medical assistance when necessary and to avoid unnecessary risk to herself or her child.

100. By enforcing Neb. Rev. Stat. § 38-613(3)(b) as applied to Lindstrom, Defendants violate her rights under the Free Exercise Clause of the First Amendment.

101. Lindstrom is entitled to declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and *Ex parte Young* to prevent ongoing and future enforcement of the challenged prohibition against her.

## THIRD CLAIM FOR RELIEF

### The Certified Nurse Midwifery Practice Act Violates Nebraska's First Freedom Act, Neb. Rev. Stat. §§ 20-701 to -705

102. Lindstrom incorporates by reference each and every allegation set forth in this Complaint.

103. Nebraska's First Freedom Act, Neb. Rev. Stat. §§ 20-701 to -705, provides that state action shall not substantially burden a person's exercise of religion unless the State demonstrates that application of the burden to the

person in the particular instance (a) furthers a compelling governmental interest and (b) is the least restrictive means of furthering that interest. Neb. Rev. Stat. § 20-703.

104.   The Act defines "exercise of religion" broadly to include any action that is motivated by a sincerely held religious belief, whether or not the action is compulsory or central to a larger system of religious belief. *Id.* § 20-702(2).

105.   The Act defines "state action" to mean the implementation or application of any law, including state laws. *Id.* § 20-702(5).

106.   The Act defines "substantially burden" to mean "any action that directly or indirectly constrains, inhibits, curtails, or denies the exercise of religion by any person or compels any action contrary to a person's exercise of religion." *Id.* § 20-702(6)(a).

107.   Lindstrom holds sincere religious beliefs regarding pregnancy and childbirth, including the belief that childbirth is a sacred and spiritual event; that it should occur in a prayerful, non-clinical environment; that her husband should be able to participate through prayer and religious ritual; and that childbirth should proceed with respect for the natural processes of the body while remaining open to medically responsible assistance where necessary.

108.   Lindstrom's desire to give birth at home with the assistance of a CNM is motivated, at least in part, by these sincerely held religious beliefs and constitutes an exercise of religion with the meaning of the First Freedom Act.

109. By enforcing the prohibition on CNMs attending home births, Defendants substantially burden Lindstrom's exercise of religion by forcing her to choose between: (a) abandoning her religiously motivated birth plan and giving birth in a hospital setting she believes is inconsistent with her religious convictions; (b) giving birth at home without the assistance of a licensed and medically trained provider, contrary to her religious belief in responsible stewardship of life and health; or (c) attempting to obtain CNM assistance in violation of Nebraska law.

110. This burden is substantial because it meaningfully constrains and inhibits Lindstrom's ability to act in accordance with her religious beliefs at a moment of profound physical, emotional, and spiritual significance.

111. The burden imposed on Lindstrom is not speculative or incidental. Nebraska law forecloses her chosen course of religious exercise by criminalizing assistance by the only class of licensed medical professionals willing and able to attend her desired home birth.

112. Prohibiting CNMs from attending Lindstrom's home birth does not further any compelling governmental interest as applied to her. Lindstrom's pregnancy is low-risk, she resides within reasonable proximity to emergency medical care, and CNMs are specifically trained to manage low-risk pregnancies, monitor labor, and initiate timely hospital transfers when necessary.

113. Even if Defendants could assert a compelling interest in maternal or fetal health, the categorical prohibition on CNM-attended home births is not the least restrictive means of furthering that interest.

114. Less-restrictive alternatives that are readily available include individualized risk screening, informed-consent requirements, emergency-transfer protocols, physician-collaboration requirements, and professional discipline for unsafe practices.

115. Nebraska's prohibition is underinclusive and irrational as applied to Lindstrom because it permits unassisted home birth while forbidding attendance by licensed medical professionals with specialized training in childbirth—thereby allowing conduct that presents greater risks to mother and baby while prohibiting conduct that mitigates those risks.

116. By substantially burdening Lindstrom's sincerely held religious exercise without satisfying strict scrutiny, Defendants have violated and continue to violate the Nebraska First Freedom Act.

117. Lindstrom is entitled to declaratory and injunctive relief pursuant to Neb. Rev. Stat. § 20-704 to prevent ongoing and future enforcement of the prohibition against CNM-attended home births against her.

25

## PRAYER FOR RELIEF

WHEREFORE, Lindstrom respectfully requests the following relief:

A.     A declaratory judgment that the home birth prohibition of Nebraska's Certified Nurse Midwifery Practice Act, Neb. Rev. Stat. § 38-613(3)(b), violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the Free Exercise Clause of the First Amendment to the United States Constitution, and the Nebraska First Freedom Act;

B.     a preliminary and permanent injunction enjoining Defendants from enforcing the home birth prohibition of Nebraska's Certified Nurse Midwifery Practice Act;

C.     nominal damages;

D.     an award of costs and attorney's fees pursuant to 42 U.S.C. § 1988 and Neb. Rev. Stat. § 20-704(3)(c); and

E.     any such other relief as the Court may deem just and proper.

Respectfully submitted this 29th day of January, 2026.

_/s/ Joshua Polk_____
JOSHUA POLK
Cal. Bar No. 329205
PACIFIC LEGAL FOUNDATION
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Tel: (916) 419-7111
JPolk@pacificlegal.org

GLENN E. ROPER
Colo. Bar No. 38723
Pacific Legal Foundation
1745 Shea Center Drive
Suite 400
Highlands Ranch, CO 80129
Tel: (916) 503-9045
GERoper@pacificlegal.org

*Attorneys for Plaintiff*